IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MAFAYETTE FIELDS,

                    Plaintiff,

      v.                                  OPINION & ORDER

JASON ACHTERBERG, KIM KANNENBERG,           14-cv-855-jdp
JOE THYNE, and TIMOTHY DOUMA,

                 Defendants.[1]

       Pro se plaintiff Mafayette Fields is a prisoner in the custody of the Wisconsin Department of Corrections (DOC). I granted him leave to proceed on due process claims against defendants Kim Kannenberg, Joe Thyne, and Timothy Douma concerning a disciplinary hearing at New Lisbon Correctional Institution (NLCI) about Fields's alleged possession of a contraband flash drive. I also allowed Fields to proceed on First Amendment retaliation and access-to-the-courts claims against defendant Jason Achterberg for Achterberg's role in blocking Fields's attempt to file a certiorari action challenging the outcome of the disciplinary hearing. The parties have filed cross-motions for summary judgment, Dkt. 42 and Dkt. 47, and several related motions. Because the undisputed facts show that Fields received constitutionally sufficient process at his disciplinary hearing and that Achterberg did not intentionally or recklessly prevent Fields from filing a certiorari action, I will grant summary judgment in defendants' favor and close the case.

---

[1] I have updated the caption to reflect the correct spelling of defendants' full names.

Before turning to the summary judgment motions, I will address the several related motions.

## A. Default judgment

Fields asks the court to enter default judgment against defendants under Federal Rule of Civil Procedure 55 or as a sanction under Rule 16(f) or Rule 37(b)(2) because defendants moved for leave to raise an exhaustion defense in their summary judgment motion, long after the deadline for filing a summary judgment motion on exhaustion had passed. Dkt. 37; Dkt. 39; Dkt. 66. I will deny Fields's motions. Rule 55(a) provides that default must be entered against a defendant who fails "to plead or otherwise defend." Defendants have answered Fields's complaint and otherwise defended themselves, so default is inappropriate under Rule 55. Rules 16(f) and 37(b)(2) allow the entry of default judgment as a sanction against a party who fails to obey a court order. Defendants have not failed to obey a court order. Rather, they asked the court to modify the scheduling order, as called for by Rule 16(b)(4). (Because defendants are entitled to summary judgment on the merits, I will not reach the exhaustion issue.) So I will deny Fields's motions for default judgment.

## B. Filing surveillance video under seal

Defendants ask the court for leave to file under seal surveillance camera footage that they say shows Fields inserting a flash drive into a computer. Dkt. 50. They argue that allowing Fields to view the footage would pose a security risk, as Fields would learn the scope of the surveillance camera's view—the same rationale they put forth for not allowing Fields to view the footage before or during his conduct report disciplinary hearing. Fields does not

oppose defendants' motion to seal, and as discussed below, their security concerns are rational, so I will grant the motion.

## C. Staying deadlines

Finally, defendants ask the court to stay all deadlines in the case pending a summary judgment decision. Dkt. 70. Because I will grant summary judgment in defendants' favor on all claims, I will deny their motion to stay the deadlines as moot.

UNDISPUTED FACTS

The following facts are undispited except where noted.

Fields was housed at the New Lisbon Correctional Institution (NLCI) from October 2010 to December 2014. On April 1, 2014, Sergeant Quigley issued conduct report number 2369865 accusing Fields of lying and possessing contraband in violation of Administrative Code section DOC 303.27 and 303.47. *See* Dkt. 51-1, at 1–2. In the report, Quigley alleges that Fields inserted a flash drive into a computer in the Badger State Industries (BSI) workshop, where Fields had a prison job, and later denied doing so. Specifically, Quigley stated that he asked Fields about a flash drive on March 25, and "Fields denied any knowledge of it." *Id.* at 1. Quigley then checked security camera footage against the computer's system log and found that a USB storage device had been installed on the computer at a certain date and time, and that Fields was "doing something with the back of the computer" at that same date and time. *Id.* Quigley explained that the system log "time is not exact." *Id.* at 2.

The report notified Fields that a disciplinary hearing would be held on April 9 and that if found guilty, Fields could be sent to disciplinary segregation for 90 days. A staff

advocate was appointed to assist Fields at the hearing. Fields says that he told his staff advocate that he wanted to view the security camera footage and a still image taken from the footage, but he was not allowed to do so; defendants argue that Fields never asked to view the footage, but the evidence they provide indicates only that Fields may not have asked to view the footage during the hearing. *See* Dkt. 68, ¶ 1 and Dkt. 69, ¶¶ 24, 34.

Fields attended the hearing with his staff advocate. The hearing was held before defendants Captain Kim Kannenberg and Joseph Thyne, a NLCI corrections unit supervisor. Kannenberg and Thyne reviewed the allegations in the conduct report, the computer's system log, and the security camera footage and still image. Thyne states in a declaration that the footage and still image show "Fields reaching around the back of the computer in BSI" at 8:45:43 in the morning on March 24, 2014, and that the system log "shows that between 8:36:10 a.m. and 8:44:53 a.m., a device was inserted and removed twice." Dkt. 52, ¶¶ 10–13. Fields was not allowed to view the footage or still image at the hearing—defendants point to evidence that Fields didn't ask to see them; Fields states that he did ask to see them but was denied. Fields still has not had the opportunity to view the footage, but he has had the opportunity to view the still image and the system log and he does not dispute Thyne's descriptions of them; what he disputes is the inference that Thyne draws from those descriptions—that Fields inserted a flash drive into the BSI computer. Fields states in a declaration that he never had a flash drive, and therefore couldn't have inserted one into the BSI computer.

At the hearing, Fields testified that someone else used the flash drive, not him, and that he touches the BSI computer "all the time," and therefore couldn't remember why he was touching it around the time the flash drive was installed. Dkt. 51-1, at 8. Mr. Minard, a

BSI supervisor, also testified at Fields's request. Fields asked Minard why, during the investigation of "inmates using a flash drive with either music or porn on it," Minard didn't tell staff that he saw Isaac Hilton (another NLCI inmate who was found guilty of possessing a flash drive in the BSI workshop) was watching a music video. *Id.* at 7. Minard responded that he never saw that. Finally, the disciplinary hearing record indicates that Kannenberg and Thyne reviewed a statement from conduct report number 1640811. *Id.* at 8. According to defendants, this is a typo: Thyne does not remember relying on a statement from another conduct report and has "not been able to locate any conduct reports with that number." Dkt. 52, ¶ 14. Fields believes that Kannenberg and Thyne did review another conduct report and that the report no longer exists because it was expunged "for cooperation in making the statement against" him. Dkt. 69, ¶ 21. But Fields points to no evidence to support this assertion.

After the hearing, Kannenberg and Thyne found Fields guilty of both violations. They explained that they believed that Fields was lying in an "attempt to avoid or lessen discipline" and believed Quigley's conduct report because he "would have no reason to fabricate the allegations." Dkt. 51-1, at 8. They concluded that it was "more likely than not" that Fields possessed a flash drive and lied when he denied knowing about the flash drive. *Id.* They issued a disposition of 90 days of disciplinary segregation. (Fields was released from disciplinary segregation after 51 days due to his positive adjustment.)

Fields appealed, arguing in part that he was never allowed to see the surveillance camera footage, still image, or conduct report number 1640811. On May 20, Deputy Warden Timothy Thomas affirmed the decision and disposition, explaining that there were "no procedural violations." Dkt. 51-1, at 11.

On June 5, Fields filed an inmate grievance alleging that the April 9 disciplinary hearing violated several procedural rules. Defendant Timothy Douma, the NLCI warden, dismissed the grievance. Fields appealed; the appeal was dismissed on June 27.

Fields then sought to file a certiorari action in Wisconsin state court challenging Kannenberg and Thyne's decision and disposition. To do so, he had to place his petition and filing fee (or a certified copy of his six-month trust account activity statement) in the mail by August 11, 2014. *See* Wis. Stat. § 893.735(2). On August 5, an unidentified staff member of the business office responded to Fields's inquiry about how to pay for the filing fee using funds from his release account by directing Fields to send a disbursement form, approved by his unit manager, to the business office. *See* Dkt. 61-2. It turns out that this was inaccurate information—use of release account funds requires approval by the business office, not the unit manager—but Fields didn't know that. At that time, defendant Jason Achterberg was Fields's unit manager. So on August 6, Fields gave his certiorari documents to an unidentified staff member to deliver to Achterberg so that Achterberg could approve the use of funds from his release account to pay the filing fee. The documents were placed in Achterberg's mailbox, but Achterberg was not at work, and because he didn't return to work until August 13, he didn't receive the documents until after the August 11 deadline had passed. By August 15, Achterberg had forwarded the documents to the business office. *See* Dkt. 20-14, at 1. It's unclear exactly what happened after that, but the documents were eventually received by the Dane County Circuit Court. The clerk of court did not file them because Fields sent a letter indicating that "it was not in [his] best interest to file the writ of certiorari because it was past the August 11, 2014 statute of limitations" and because he did not include a trust account activity statement. Dkt. 20-13. Specifically, a staff attorney explained in a letter to

Fields, "The affidavit that you sent us with this filing indicated that you placed the documents in the prison mail on August 6, 2014. Therefore, if you had provided the certified 6 month trust account activity statement along with the other documents, we would have been able to properly file your case." *Id.*

ANALYSIS

Fields is proceeding on due process claims against Kannenberg, Thyne, and Douma for prohibiting him from viewing the security camera footage before or during the disciplinary hearing and for disciplining him without some evidence of guilt. (He now argues that relying on the statement in the now-missing conduct report number 1640811 was also a due process violation, but he did not include this claim in his complaint, so I will not allow him to proceed on it now.) He is proceeding on First Amendment retaliation and access-to-the-courts claims against Achterberg for delaying sending his certiorari documents to the business office. The parties have filed cross-motions for summary judgment on all of Fields's claims.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If a party cannot create a genuine dispute, summary judgment against that party is appropriate. "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party.'"

*Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)). In this case, Fields bears the burden of proving defendants' liability under 42 U.S.C. § 1983, which allows individuals to sue state government employees for civil rights violations.

## A. Due process claims

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriving any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To prevail on a section 1983 procedural due process claim, Fields must demonstrate that he was deprived of a liberty interest and that a required procedure wasn't provided to him.

Fields's claim falters on the first prong, because the Supreme Court has held that 30 days in disciplinary segregation is not long enough to be considered a deprivation of a liberty interest within the meaning of the Due Process Clause, and the Seventh Circuit has extended the rule to cover terms of segregation of at least 90 days. *See Sandin v. Connor*, 515 U.S. 472, 486 (1995); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005). But I will focus my analysis on the procedural issue that is at the heart of Fields's claim: whether he was provided with the procedures due to him under the Due Process Clause.

Transfer to segregation requires "informal, nonadversarial due process" procedures, *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012), including disclosure of material exculpatory evidence to the inmate and a decision supported by "some evidence." *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011).

Fields contends that he was denied due process in two ways. First, he contends that the security camera footage is exculpatory evidence that he was not allowed to review. The

footage shows a man—Fields has seen the still image taken from the footage and doesn't dispute that the man is him—standing in front of the computer and then moving his right hand from near his hip to reach behind the computer. In other words, it looks like Fields took something from his pocket and put it by the back of the computer—so the footage would tend to inculpate Fields, not exculpate him.

Fields argues that there is one exculpatory bit of information to be pulled from the footage: the time stamp from the security camera does not line up exactly with the time recorded by the computer system log—according to the system log, the flash drive would have been last inserted at 8:44:53 a.m.; according to the security camera, Fields inserted the flash drive at 8:45:43 a.m. Fields received some notice of this discrepancy in the conduct report, which explained that "the BSI computer is not on a network, so the time is not exact." Dkt. 51-1, at 2. And defendants offer a common-sense explanation for the discrepancy: the camera's clock isn't synced with the computer's. Despite the minor discrepancy, the footage is not exculpatory because it is not favorable to Fields. The same is true for the still image.

And even if the security camera footage were exculpatory, Fields still wouldn't have been entitled to review it. "[A]n inmate is not entitled to disclosure of an exculpatory surveillance video if allowing the inmate to see the tape would entail a security risk." *Jones*, 637 F.3d at 848. Here, defendants assert that allowing inmates to view security camera footage is a security risk "because it allows them to know what parts of the institution are not being recorded." Dkt. 52, ¶ 26. *Jones* held that this is a "valid concern [that] justifies" withholding exculpatory evidence from an inmate. 637 F.3d at 849. Defendants have not asserted this justification as to the still image, which they allowed Fields to view. The security camera footage moves, and thus shows the entire range of the camera. Fields objects now that

defendants didn't offer this security-risk justification when they refused to disclose the footage to him, but they weren't required to explain their reasons to him. *Cf. id.* at 844, 848–49 (accepting a security-risk justification at litigation without indication that the justification was offered at the time of non-disclosure). The bottom line is that the security camera footage and still image were not exculpatory, and therefore Fields did not have a due process right to their disclosure.

Second, Fields contends that Kannenberg and Thyne's decision finding him guilty of possessing contraband and lying was not supported by "some evidence." The "some evidence" standard is a "meager threshold." *Id.* (quoting *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007)). As explained above, the security camera footage paired with the computer's system log easily provides some evidence of Fields's guilt. So if Fields was entitled to any due process procedures at his disciplinary hearing, those procedures were fulfilled. I will grant summary judgment in defendants' favor on the due process claims.

## B. First Amendment claims

To succeed on his access-to-the-courts claim, Fields must show that Achterberg "failed to assist in the preparation and filing of meaningful legal papers" and that Achterberg's failure caused him some "detriment," or injury. *Lehn v. Holmes*, 364 F.3d 862, 869 (7th Cir. 2004) (quoting *Brooks v. Buscher*, 62 F.3d 176, 179 (7th Cir. 1995)). To succeed on his retaliation claim, Fields must show that Achterberg was motivated, at least in part, by Fields's inmate grievance, and that Achterberg's failure to assist him would deter a person of "ordinary firmness" from filing inmate grievances in the future. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The retaliation claim requires proof of retaliatory intent; the access-to-the-courts claim requires only "intentional conduct," that is, something more than

"mere negligence, as when legal mail is inadvertently lost or misdirected." *Simkins v. Bruce*, 406 F.3d 1239, 1242 & n.3 (10th Cir. 2005) (citing *Gregory v. Nunn*, 895 F.2d 413, 415 n.2 (7th Cir. 1990)); *see also Brokaw v. Mercy County*, 235 F.3d 1000, 1012 (7th Cir. 2000) (explaining that all section 1983 claims require a showing of "deliberate or reckless disregard of plaintiff's constitutional rights" (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)).

Fields points to no evidence that Achterberg intentionally delayed forwarding Fields's certiorari documents to the business office for retaliatory reasons or for any other reason. Instead, the undisputed facts indicate that Achterberg was not at work during the delay, and therefore he was unaware that Fields had sent the certiorari documents to him. When Achterberg returned to work, he forwarded the documents to the business office within two days. Fields argues that "Achterberg knew that he was going on vacation," Dkt. 56, at 9, but there's no indication that Achterberg knew Fields would be sending him the certiorari documents. And as Fields acknowledges, the delay wasn't the reason Fields's certiorari petition would have been denied, as the Dane County Circuit Court would have deemed the documents filed on August 6, the day Fields placed them in the prison mail system. *See* Dkt. 20-13 and Dkt. 56, at 9. Rather, the problem was the lack of a trust account statement. Achterberg wasn't in charge of creating trust account statements and Fields didn't ask him to create one. Without evidence that Achterberg acted with deliberate indifference, Fields's First Amendment claims fail, too.

ORDER

IT IS ORDERED that:

11

1.  Plaintiff Mafayette Fields's motion for entry of default, Dkt. 37, is DENIED.

2.  Plaintiff's motion for default judgment, Dkt. 39, is DENIED.

3.  Plaintiff's motion for sanctions, Dkt. 66, is DENIED.

4.  Defendants' motion to file surveillance video under seal, Dkt. 50, IS GRANTED.

5.  Defendants' motion to stay deadlines pending decision on motion for summary judgment, Dkt, 70, is DENIED as moot.

6.  Defendants' motion for summary judgment, Dkt. 47, is GRANTED.

7.  Plaintiff's motion for summary judgment, Dkt. 42, is DENIED.

8.  The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered March 26, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge